**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **THOMAS BLEVENS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:25-cv-01447** |
| | ) | **Judge Aleta A. Trauger** |
| **ICROM LOGISTICS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM**

The plaintiff, Thomas Blevens, has filed a complaint, asserting various tort claims against Icrom Logistics, Inc. ("Icrom Logistics"). (Compl., Doc. No. 1-1.) Blevens has now filed a Motion for Spoliation Sanctions against Icrom Logistics for alleged destruction of physical and electronic evidence. ("Spoliation Motion," Doc. No. 21.) Icrom Logistics has filed a separate Motion to Stay the Motion for Spoliation Sanctions and/or For a Protective Order. ("Stay Motion," Doc. No. 27.)

For the following reasons, the court concludes that an evidentiary hearing is warranted before the court can rule on the Spoliation Motion. Because an evidentiary hearing is needed, the court will defer ruling on the Spoliation Motion. The Stay Motion will be denied.

## I. BACKGROUND

### A. The July 11, 2025 Collision in Nashville

The following factual allegations are taken from the Complaint (Compl., Doc. No. 1-1), which are accepted as true at this stage in the litigation. Blevens is a resident of Florida. (Compl. ¶ 1.) Icrom Logistics is an Illinois-based corporation that is in the business of transporting commercial cargo across state lines. (*Id.* ¶¶ 2, 4.) The company employed Blevens as a commercial truck driver, beginning on April 23, 2025. (*Id.* ¶ 11.) Icrom Logistics assigned Blevens to operate a 2023 Kenworth Truck (the "Truck"). (*Id.* ¶ 13.)

On July 10, 2025, Blevens was assigned by Icrom Logistics to transport a commercial load from Florida to Georgia. (*Id.* ¶ 16.) On July 11, 2025, Blevens—"while acting within the course and scope of his employment"—"personally inspected the Truck assigned to him and observed that the front left tire was worn and required a replacement" because "[t]he tire posed a risk of malfunction." (*Id.* ¶ 17.) He "promptly reported the unsafe condition of the tire to Icrom Logistics" in a pre-trip inspection report, which "specifically advised that the tire required maintenance or replacement before the Truck could be safely operated at highway speeds." (*Id.* ¶ 18.) Blevens submitted the report electronically through the company's "electronic driver log system"—an electronic repository of inspection reports submitted by drivers that "Icrom maintains control over." (Doc. No. 22 at 18.) Icrom produced Blevens' driver log, which apparently shows that he submitted an inspection report on July 11, 2025 at 6:30 a.m., as reflected in the screenshot below from driver logs produced by Icrom Logistics in this case:

| TIME (CT) | CODE | LOCATION | ODOMETER (MI) | ENGINE HOURS | ORIGIN | NOTES |
|---|---|---|---|---|---|---|
| Jul 10, 06:11:54 pm | Off Duty | 13mi ESE from Dickson, TN | 428263 | 20217.6 | Driver | Break |
| Jul 11, 03:29:36 am | Certification 7/10/2025 | | | | | |
| Jul 11, 06:30:42 am | On Duty | 13mi ESE from Dickson, TN | 428263 | | Driver | Pretrip |
| Jul 11, 06:51:35 am | Driving | 13mi ESE from Dickson, TN | 428263 | 20230.2 | Auto | |

(*Id.* at 18–19) According to Blevens, the company disregarded his report and "directed" him "to proceed with his assigned route in the Truck equipped with the defective tire." (Compl. ¶ 19.)

Less than one hour later, Blevens—"while operating the Truck at highway speeds on Interstate 40 near mile marker 211 in Nashville"—"experienced a tire failure when the defective tire blew out, causing him to be unable to maintain control of the Truck." (*Id.* ¶ 21.) "As a result of the sudden tire failure, the Truck veered off the roadway, crossed over the rumble strips, and

collided with the guardrail." (*Id*. ¶ 22.) The Truck overturned, rolled down an embankment, and landed on the opposite side of the highway, as depicted in the photographs below:







(*Id*. ¶¶ 22–23) Blevens "suffered severe and permanent injuries" due to the accident, including "neck and back injuries for which he is still undergoing medical treatment." (*Id*. ¶¶ 34, 43.) It is "highly unlikely" that he can "operate a commercial motor vehicle again" due to his injuries. (Doc. No. 22 at 4.)

**B. The Spoliation Motion**

*1. Blevens' Position*

Blevens now claims that Icrom Logistics destroyed multiple pieces of evidence after litigation was reasonably anticipated. (*Id*. at 10.) First, he claims that, following the collision,

Icrom Logistics "disassembled" the Truck and "stripped [it] down to the bare chassis." (*Id.* at 6.) The component parts—the cab, engine, tires, etc.—have been removed from the Truck and "presumably destroyed." (*Id.* at 1.) The company has also not explained why it disassembled the Truck, when it did so, or who made that decision. (*Id.*)

Second, Icrom Logistics has failed to produce the pre-trip inspection report that Blevens submitted to the company before the collision.[1] (*Id.* at 1, 4, 17–19.) According to Blevens, the company produced his driver logs but has refused to produce the pre-trip inspection report. (*Id.* at 18.) The inspection report allegedly documented the deficient and unsafe condition of the front left tire less than an hour before the collision occurred. (*Id.* at 1, 4, 17–19.)

Third, Blevens accuses Icrom Logistics of unilaterally "imaging" the Truck's Engine Control Module ("ECM"), in violation of an agreement purportedly entered between the parties after this litigation began that governed the inspection of the ECM data. (*Id.* at 1, 5–8, 14–15.) The parties do not explain what an ECM is, but the court understands that it is the Truck's central computer that records, among other things, the vehicle's operational data for maintenance and event analysis. Blevens claims that, on April 26, 2026, the parties agreed that "no download or data retrieval would be attempted from the ECM until the parties had circulated and agreed upon an inspection protocol governing that process." (*Id.* at 14.) Despite the agreement, Icrom Logistics' counsel disclosed in an email, dated June 9, 2026, that the company's retained expert—SEA Limited—attempted to retrieve data from the ECM on June 4, 2026. (Doc. No. 21-6 at 1; Doc. No.

---

[1] The pre-trip inspection report is also referred to as a "Driver Vehicle Inspection Report." (Doc. No. 22 at 11.) According to Blevens, the company is required to retain these reports for a period of "three months from the date the written report was prepared" under federally-mandated regulations. (*Id.* (quoting 49 C.F.R. § 396.11(a)(4)).) Icrom Logistics does not dispute that federal regulations required the company to retain these reports.

24-1 at 1.) According to Icrom Logistics, the data that was retrieved from the ECM was limited "to the [vehicle identification number] of the truck, which [the company's] expert confirmed matched the VIN of the truck operated by Mr. Blevens at the time of the incident." (Doc. No. 21-6 at 1.) The company has represented that "there was no additional data on the ECM (concerning the incident at issue or otherwise)" that was successfully retrieved. (*Id.*) In Blevens' view, the company's imaging of the ECM violated the parties' agreement because the agreement prohibited the company's expert from attempting to download or retrieve data from the ECM "until the parties had circulated and agreed upon an inspection protocol governing that process." (Doc. No. 22 at 7.) Blevens' counsel never agreed to any inspection protocol because he/she never received one from Icrom Logistics or its experts. (*Id.* at 14.)

Blevens now seeks a spoliation finding against Icrom Logistics as to these three pieces of evidence. He argues that the company had a duty to preserve the Truck and its component parts (including the front left tire) but failed to do so. (*Id.* at 15–17.) Blevens claims to have been prejudiced by the apparent destruction of this physical evidence, as the parties' claims and defenses "turn on the physical condition" of the Truck and its component parts, including the front left tire. (*Id.* at 4.) He claims that Icrom Logistics' refusal to provide the pre-trip inspection report is equally prejudicial: the inspection report, authored by Blevens less than one hour before the collision occurred, "is critical to [Blevens'] ability to prove (1) the tire's condition from the outset of the trip and (2) the tire blowout in this case." (*Id.* at 18.)

Lastly, Blevens asserts that he has been prejudiced by SEA Limited's unilateral imaging of the ECM because the expert's imaging test violated the parties' earlier agreement to establish a protocol before any download was attempted, which has "deprived" him "of the opportunity to assess the integrity of the ECM download." (Doc. No. 22 at 15.) Because S.E.A. Limited attempted

a download without a prior protocol (or Blevens' knowledge or participation), he "must accept SEA Limited's position that the ECM contained no data—whether that is true or not." (*Id.*) Thus, Blevens and the court "will never know whether data was available from the Truck's ECM." (*Id.*)

2. *Icrom Logistics' Position*

The defendant argues that the Spoliation Motion should be denied on four grounds. First, Icrom Logistics asserts that Blevens cannot establish that the Truck and its component parts were lost or destroyed with the necessary mental state required for a spoliation finding, although the company does not dispute that this evidence has been lost or destroyed. (*Id.* at 7.) In fact, the company seems to confirm as much, justifying the destruction as "merely a small business' attempt to mitigate its losses and begin the repair process on the vehicle." (*Id.* at 9.)

Second, Icrom Logistics argues that Blevens has failed to establish that certain evidence—the ECM data or the pre-trip inspection report—existed in the first place. (Doc. No. 23 at 1, 7.) Third, even "if evidence is no longer available," the company claims that Blevens cannot establish "that it was intentionally destroyed with a culpable state of mind." (*Id.* at 1, 7, 9–10.)

Fourth, the company asserts that, to the extent destruction took place, Blevens cannot show that he was prejudiced by the destruction of any evidence. (*Id.* at 7–9, 16–17.) As to the Truck, the company maintains that "extensive" photographic and video evidence "from the scene of the incident" exists, which depicts "the condition of the truck" and compensates for any destruction. (*Id.* at 4–5, 8.) Further, Blevens had "ample opportunity" to photograph the Truck before it was disassembled and its tires were destroyed, as the plaintiff's counsel "inspected" the vehicle on August 22, 2025. (*Id.* at 8–9.) Likewise, a spoliation finding is "premature, as discovery is ongoing and alternative methods of acquiring the evidence Plaintiff alleges was spoliated remain viable." (*Id.* at 7.)

As to the ECM data, the company's expert—SEA Limited—has indicated that the testing previously performed in June 2026 did not result in any data being "deleted or otherwise altered." (Doc. No. 24-1 at 2.) SEA Limited recommends that additional imaging be performed using an alternative imaging method than the one previously used in June 2026.[2] (*Id.*)

## II. DISCUSSION

In this case, the court believes that an evidentiary hearing is warranted before it can rule on the Spoliation Motion. As an initial matter, the record is far from clear as to whether the Truck and its component parts were destroyed. Blevens suggests that this physical evidence has been destroyed (Doc. No. 22 at 1, 11–14), which the company does not necessarily deny. (Doc. No. 23 at 7, 9.) To the extent this physical evidence was destroyed or significantly altered by Icrom Logistics or its agents, the record is also not clear with regard to when that occurred. Further, if this evidence has been destroyed, the court needs to understand what other evidence exists and is available regarding the condition of the Truck and its tires before and after the collision, in order to craft an appropriate remedy tailored to this case.

On the current record, the court also cannot determine whether the pre-trip inspection report and ECM data have been destroyed. Blevens stops short of asserting that either the inspection report or ECM data have been destroyed. (Doc. No. 22 at 1, 4, 14–15, 17–19.) Instead, he claims that (1) Icrom Logistics has failed to produce the inspection report in discovery; and (2) Icrom Logistics' unilateral imaging of the ECM violated the parties' agreement and "deprived" him "of the opportunity to assess the integrity of the ECM download." (*Id.* at 15, 17–18.) Those

---

[2] The defendant also urges this court to deny Blevens' Spoliation Motion because Blevens failed to comply with Local Rule 7.01(a)(1) as he neither conferred with the defendant before filing the motion nor did he include the required certificate of consultation. (Doc. No. 23 at 1–2.) In the interest of efficiency and moving this case forward, the court will not deny the Spoliation Motion on that basis.

allegations are concerning and call into question the defendant's conduct in discovery, but the court cannot determine that spoliation occurred with the limited evidence before it.

At the same time, Icrom Logistics argues that Blevens cannot demonstrate that the inspection report and ECM data ever existed. (Doc. No. 23 at 1, 7.) The court is deeply skeptical of that argument, at least with respect to the inspection report, given that the reports are presumably in the custody or control of Icrom Logistics and the driver log produced by the company apparently confirm that Blevens submitted a report less than one hour before the collision. (Doc. No. 22 at 18–19.) Icrom Logistics does not respond to this evidence in any clear way. Nor does the company put forward any of its own evidence showing that it was unable to retrieve Blevens' inspection report after conducting a thorough search of its systems.

Finally, the record, as it stands, is not clear that the ECM data has been spoliated. SEA Limited has apparently prepared a report that "stresses that no data has been deleted or otherwise altered on the subject ECM by merely attempting to image the ECM." (Doc. No. 24-1 at 2.) The expert also recommends that additional imaging be performed using an alternative imaging method, which may extract additional data from the ECM. (*Id.*) The company has not submitted any declaration or affidavit from its expert, so the court is unwilling to accept these assertions as admissible evidence.

## III. CONCLUSION

To summarize, the court finds that an evidentiary hearing is warranted to properly resolve the factual disputes raised in the plaintiff's Spoliation Motion and the defendant's Response. In light of this ruling, the court will defer ruling on the plaintiff's Spoliation Motion. (Doc. No. 21.)

The hearing shall focus on developing the factual record with evidence relevant to the essential elements for establishing spoliation. As to the alleged spoliation of tangible evidence

(*i.e.*, the Truck and its component parts), Blevens must establish, by a preponderance of the evidence, that (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1070 (6th Cir. 2014). The second element for establishing spoliation of tangible evidence requires only a showing that the evidence was destroyed "knowingly" or "negligently." *Beaven v. U.S. Dep't of Just.*, 622 F.3d 540, 554 (6th Cir. 2010).

The elements necessary to establish spoliation of electronically stored information ("ESI") are similar to non-ESI and are set forth in Federal Rule of Civil Procedure 37(e). To show that ESI (*i.e.*, the pre-trip inspection report and ECM data) has been spoliated, Blevens must first show (1) ESI "that should have been preserved in the anticipation or conduct of litigation" was "lost"; (2) the party who had a duty to preserve the ESI "failed to take reasonable steps to preserve it"; and (3) the information "cannot be restored or replaced through additional discovery." *Vanstory v. Am. Health Partners Mgmt., LLC*, No. 3:24-cv-00945, 2026 WL 3362890, at *4 (M.D. Tenn. Nov. 5, 2026) (quoting *Adamczyk v. Sch. Dist. of City of Hamtramck Pub. Schs.*, 667 F. Supp. 3d 534, 556 (E.D. Mich. 2023)).

To the extent Blevens can satisfy this initial three-part showing, he must also demonstrate that the defendant "acted with the intent to deprive another party of the information's use in the litigation" if he seeks the "more serious sanctions" available under Rule 37(e)(2). *Vanstory*, 2026 WL 3362890, at *6 (quoting Fed. R. Civ. P. 37(e)(2)). As this court recently noted, "[t]he showing required to obtain Rule 37(e)(2) sanctions is demanding" and requires the moving party to "establish 'specific intent' by the spoliator 'to deprive another party of the information's use in the

litigation.'" *Id.* (quoting *EPAC Techs., Inc. v. Harpercollins Christian Publ'g, Inc.*, No. 3:12-cv-00463, 2019 WL 109371, at *15 (M.D. Tenn. Jan. 4, 2019)).

Given the factual disputes at issue, the court suggests that the parties make the following witnesses, at a minimum, available for the hearing: representatives from the defendant who can testify to the status and location of the Truck and its component parts (including, without limitation, the tires affixed to the Truck on July 11, 2025) and the existence and location of the pre-trip inspection report apparently submitted by Blevens to the defendant on the morning of the collision; Dr. Ashley Dunn of SEA Limited; and Michael A. DiTallo of Dynamic Safety, LLC.[3]

The court will deny the defendant's Stay Motion. (Doc. No. 27.) The Stay Motion requests that the court pause its consideration of the Spoliation Motion in order to "permit an attempt to download the electronically stored data …, approve of the protocol/attempt to download the ECM and ABS Module, and/or for a protective order to protect further argument from Plaintiff that an attempted download would constitute sanctionable litigation conduct." (*Id.* at 3.) The plaintiff opposes the Stay Motion. (Doc. No. 29.) The court declines to issue a stay at this time because the court must first determine whether the evidence at issue has been spoliated. Once the factual record is further developed regarding the existence of the ECM data, the court and the parties can discuss a path forward with regard to downloading the data, to the extent that is possible. The court warns the defendant that it shall not undertake any effort to download or extract data from the ECM until further order from the court.

[3] The court understands that Mr. DiTallo is the traffic accident reconstruction expert retained by the plaintiff. (Doc. No. 22 at 5.)

An appropriate order is filed herewith.

ALETA A. TRAUGER
United States District Judge